UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 14-CV-81485-Marra-Matthewman

TRANSUNION RISK AND ALTERNATIVE
DATA SOLUTIONS, INC.,

    Plaintiff,

v.

DANIEL MACLACHLAN,

    Defendant.
_____/

## OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

This matter is before the Court on Plaintiff's Motion for Partial Summary Judgment (DE 49). The motion is ripe for review. For the following reasons, the motion is denied.

### I. Facts[1]

Plaintiff, Transunion Risk and Alternative Data Solutions, Inc. ("TRADS"), sues its former employee, Defendant, Daniel MacLachlan, for his alleged breach of a noncompetition agreement.

TRADS is in the business of providing risk-management solutions from a data center that its customers access electronically. (DE 50 ¶ 1; DE 59 ¶ 1.) The risk management industry is highly competitive. (DE 50 ¶ 5; DE 59 ¶ 5.) Known direct competitors of TRADS that offer similar services include Interactive Data, LLC ("Interactive") and many others. (DE 50 ¶ 5; DE 59 ¶ 5.)[2] The parties

---

[1] These facts are undisputed or, where disputed, taken in the light most favorable to the nonmovant.

[2] MacLachlan does not state the allegations in this paragraph are undisputed, but his only response is that he disputes that The Best One is a competitor. Because TRADS's record citations support the facts to which Maclachlan fails to respond, the Court considers these facts undisputed. *See* S.D. Fla. L.R. 56.1(b). Throughout this order, the Court considers any of TRADS's record-supported assertions that MacLachlan fails to address in his response statement of facts to be undisputed. *See*

dispute whether The Best One, Inc. ("The Best One") is also a competitor. (DE 50 ¶ 5; DE 59 ¶ 5.)

Prior to his employment at TRADS, MacLachlan served as CFO of TRADS's predecessor, TLO, LLC ("TLO"), from March 2009 through its acquisition by TRADS in December 2013. (DE 50 ¶ 7; DE 59 ¶ 7.) In September 2012, TLO acquired Interactive and brought in a team of present or former Interactive employees to take over management of TLO. (DE 50 ¶ 9; DE 59 ¶ 9.) After the death of TLO's founder in March 2013, however, the new management team left TLO and the acquisition was unwound. (DE 50 ¶ 9; DE 59 ¶ 9.) In December 2013, TRADS acquired TLO out of bankruptcy for $154 million and hired MacLachlan as its CFO. (DE 50 ¶ 10; DE 59 ¶ 10.)

In connection with his employment at TRADS, MacLachlan signed an offer letter that stated:

> By accepting this offer of employment with [TRADS], you acknowledge that TLO has assigned all of its rights under the Confidentiality, Nondisclosure, Noncompetition, Nonsolicitation and Nondisparagement Agreement you executed with TLO (the "Restrictive Covenants Agreement") to [TRADS]. You agree that [TRADS] and its affiliates are hereby substituted for TLO and TLO's affiliates, and they can enforce the Restrictive Covenants Agreement with respect to the business being acquired by the [TRADS] from TLO (and as such business is further developed by [TRADS]) and in the geographic areas in which [TRADS] operates the business after the acquisition.

(DE 50 ¶ 11; DE 59 ¶ 11; DE 50-2 at 111.) As consideration for his employment, MacLachlan was provided a $185,000 base salary, a discretionary performance-based bonus, a $1,000 "Welcome Bonus," and an equity award of stock options. (DE 50 ¶ 11; DE 59 ¶ 11; DE 50-2 at 109–10.)

In addition, on March 13, 2014, MacLachlan executed a Noncompetition and Nonsolicitation Agreement ("Noncompetition Agreement") with TRADS, which provides for a one-year noncompete term. (DE 50 ¶ 12; DE 59 ¶ 12.) Paragraph 2 of the Noncompetition Agreement provides in part:

> Beginning on the Effective Date and ending one (1) year after the end or termination

---

*id.* This does not apply to assertions to which MacLachlan disputes based on lack of discovery.

>    of Individual's employment, Individual will not directly or indirectly, either as owner, principal, agent, employee, employer, stockholder, co-partner, or consultant, or in any other individual or representative capacity:
>
>    (a)   Engage in a business or activity that is the same as or similar to any Business conducted by the Company during Individual's employment by the Company . . . ;
>
>    (b) enter into any employment or business relationship with any person or entity that engages in a Business that is the same as or similar to any Business conducted by the Company during Individual's employment by the Company, including, without limitation, . . . Interactive Data LLC . . . ; or
>
>    (f) prepare in any way to engage in any of the conduct described in subsections 2(a)-(e) above.

(DE 50 ¶ 12; DE 59 ¶ 12; DE 50-2 at 114–15.)

As CFO, MacLachlan was privy to much of TRADS's confidential and proprietary information that is encompassed within the Noncompetition Agreement's broad definition of "Confidential Information." (DE 5-5 at 2; DE 50 ¶¶ 22–24, 28, 34–35; DE 59 ¶¶ 22–24, 28, 34–35.)[3] He gained further knowledge of confidential and proprietary information during various senior-management and line-of-business meetings. (DE 50 ¶¶ 30–32.)[4]

---

[3] MacLachlan states he disputes that the information was confidential. The Noncompetition Agreement's definition of "Confidential Information" excludes "information that has become generally known or available to the public." (DE 5-5 at 2.) MacLachlan cites testimony that certain price restructuring information is publicly available. (DE 31 at 87:12–88:7.) He also cites testimony that, during the time Interactive acquired or was in the process of acquiring TLO (prior to TRADS's acquisition of TLO), members of the team of Interactive employees that managed TLO had access to TLO's confidential business information. (DE 59 ¶¶ 22, 25–26 (citing DE 31 at 87:12–88:7, 159:20–161:5, 186:5–16, 198:17–199:3)).) Even disregarding this information, Maclachlan's knowledge went beyond this information and his record citations fail to address the confidentiality of the remaining information. MacLachlan also attempts to dispute his knowledge of TRADS's "three-year plan," but TRADS supports this assertion with record citations (including to MacLachlan's testimony) and MacLachlan's only record citation to dispute this fact relates to his *contribution* to the three-year plan rather than his *knowledge* of it. (DE 59 ¶ 28 (citing DE 31 at 125:13– 17).) Thus, it is undisputed that he was privy to much of TRADS's confidential information.

[4] MacLachlan states he disputes that he participated in such meetings, but TRADS supports its assertion with record citations and MacLachlan's record citations merely demonstrate that his participation in these meetings ceased in August 2014.

For at least some time as TRADS's CFO, MacLachlan had responsibility in planning forward strategy of the company and other key financial aspects of the company, including treasury and cash management, tax compliance and strategy, investor relations, and risk management. (DE 23-1 ¶ 3; DE 50 ¶ 8; DE 59 ¶ 8.) MacLachlan claims that, after a transition period, he was stripped of responsibility and participation in planning forward strategy of the company as well as the other key financial aspects of the company. (DE 23-1 ¶ 3.) According to MacLachlan, he was relegated to reporting on the business's past performance. (*Id.*) He further claims that, in August or September 2014, he was "demoted" from CFO to Director of Finance and Accounting, which was the same position he held in his first job after college. (*Id.*) Despite his change in job title, MacLachlan's salary, bonus structure, and stock options remained the same. (DE 50 ¶ 369; DE 59 ¶ 39.)

In September 2014, investor Michael Brauser founded The Best One. (DE 50 ¶ 15; DE 59 ¶ 15.) Brauser previously, through one of his companies, had unsuccessfully attempted to purchase TLO during the bankruptcy proceedings. (DE 50 ¶ 15; DE 59 ¶ 15; DE 31 at 146:8–11.) That same month, MacLachlan had an informal interview with Brauser. (DE 50 ¶ 15; DE 59 ¶ 15.) Shortly thereafter, on October 2, 2014, The Best One acquired Interactive. (DE 50 ¶ 16; DE 59 ¶ 16.)

MacLachlan resigned from TRADS the next day. (DE 50 ¶ 16; DE 59 ¶ 16.) On October 6, 2014, MacLachlan signed an employment agreement with The Best One. (DE 50 ¶ 16; DE 59 ¶ 16.) Although MacLachlan's last day at TRADS was scheduled to be October 17, 2014, he left TRADS on October 13, 2014 and began working at The Best One on October 14, 2014. (DE 50 ¶ 17; DE 59 ¶ 17.) MacLachlan concedes that, at the time of his resignation, Interactive had been competing with TRADS for some time. (DE 50 ¶ 46; DE 59 ¶ 46.)   While the parties dispute whether The Best One is one of TRADS's competitors in the risk-management industry, it is undisputed that The Best One

is the parent company and 100 percent owner of Interactive and that Interactive is a competitor of TRADS in the risk-management industry. (DE 23-1 ¶ 4; DE 50 ¶¶ 5, 42; DE 59 ¶¶ 5, 42.)

On November 26, 2014, TRADS filed a two-count complaint against MacLachlan for breach of contract and injunctive relief. (DE 1.) On February 10, 2015, after conducting an evidentiary hearing, the Court entered an order granting TRADS's motion for a preliminary injunction enforcing the Noncompetition Agreement. (DE 25.) MacLachlan appealed that interlocutory order to the Eleventh Circuit. While the case was on appeal to the Eleventh Circuit, TRADS moved for partial summary judgment as to liability only on both counts of its complaint. (DE 49.)

On October 1, 2015, the Eleventh Circuit issued its mandate vacating the preliminary injunction order and remanding to this Court "for the limited purpose of determining whether the threatened injury to TRADS outweighs the damage the injunction may cause MacLachlan, giving full consideration to the hardship MacLachlan would suffer should the injunction issue." (DE 75.) After a hearing on this issue on remand, the Court reinstated the preliminary injunction, which expired on February 10, 2016. (DE 87.)

## II. Legal Standard

The Court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). It must do so by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

If the burden of persuasion lies with the nonmovant, summary judgment may be granted where the movant either negates an essential element of the nonmovant's claim or demonstrates to the Court that the nonmovant's evidence is insufficient to establish an essential element of that claim. *Celotex*, 477 U.S. at 331. Any doubt regarding whether a trial is necessary must be resolved in favor of the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

After the movant meets its burden of production, this burden shifts to the nonmovant. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts or materials in the record . . . or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The nonmovant's evidence cannot "consist of conclusory allegations or legal conclusions." *Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991). Where the nonmovant bears the burden of persuasion, it must produce more than a mere scintilla of evidence supporting its position; "there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).

### III. Discussion

#### A. Breach of Contract Claim

To prevail on a claim for breach of contract under Florida law, the plaintiff must prove (1) a valid contract; (2) a material breach; and (3) damages. *Murciano v. Garcia*, 958 So. 2d 423, 423 (Fla. Dist. Ct. App. 2007) (per curiam). While a plaintiff moving for summary judgment solely as to liability on a claim for breach of contract need not prove the specific amount of damages to prevail, the plaintiff still must prove *some* actual damage. *AmeriPath, Inc. v. Wetherington*, No. 10-60766-CIV, 2011 WL 1303804, at *5 (S.D. Fla. Apr. 4, 2011); *City of Miami Beach v. Carner*,

579 So. 2d 248, 253 (Fla. Dist. Ct. App. 1991) ("[P]roof of some actual damage is an element of liability for breach of contract.") MacLachlan claims there is a genuine issue of fact as to whether TRADS suffered any damages as a result of his alleged breach of the Noncompetition Agreement.

In its motion, TRADS claims that it has suffered the following damages as a result of MacLachlan's alleged breach: the costs incurred in investigating whether MacLachlan had accepted employment with a direct competitor, competitive harm resulting from the exposure of TRADS's confidential and proprietary business information to a direct competitor, and the costs (including attorneys' fees) incurred in being forced to seek an injunction to protect its legitimate business interests.[5] (DE 49 at 9.)

While it is uncertain whether the costs incurred in investigating a potential breach are recoverable damages for a claim for breach of contract, the Court need not determine whether such damages are recoverable because TRADS provides no evidence of such damages. While TRADS is not required to prove the amount of these damages, its failure to provide any evidence relating to such damages renders summary judgment inappropriate on this basis.

As to TRADS's next argument, there is a factual question regarding whether MacLachlan's disclosure of any of TRADS's confidential information to a direct competitor exposed TRADS to competitive harm. While MacLachlan initially claimed he did not retain or share any of TRADS's information after his employment (DE 23-1 ¶ 8), he now admits that he retained archived email files from his employment with TRADS. (DE 62-2 ¶¶ 4–5.) MacLachlan claims he provided these files

---

[5] In its reply, TRADS argues that it is entitled to damages under the Noncompetition Agreement's liquidated damages provision. The summary judgment record is too undeveloped to determine the enforceability of this provision. The parties' statements of undisputed facts do not address it at all. Accordingly, summary judgment based on this provision is inappropriate.

only to TRADS's counsel in response to a discovery request in separate litigation and never provided them to The Best One or anyone else. (DE 62-2 ¶¶ 4–5.) But these documents were unsealed in the separate litigation, making them publicly available, and thus available to The Best One. (DE 62-6.)

Nevertheless, while it is apparent that MacLachlan retained at least some emails from his employment at TRADS, TRADS fails to explain how the exposure of these emails resulted in actual damage and it is not apparent from a review of these emails that they contain the type of information that would subject TRADS to competitive harm. (DE 62-5.) Taking the facts in the light most favorable to MacLachlan, these emails were the only exposed documents and their exposure did not cause TRADS harm. Accordingly, there is a genuine issue of material fact as to whether TRADS suffered damages resulting from the exposure of its confidential information.

TRADS's final argument as to damages is that it has incurred attorneys' fees and other costs to enforce the Noncompetition Agreement. TRADS notes that the Noncompetition Agreement contains a provision for recovery of reasonable attorneys' fees and costs by the prevailing party in any action to enforce the agreement. It is well-settled, however, that contractually-authorized attorneys' fees are not damages under Florida law. *Cheek v. McGowan Elec. Supply Co.*, 511 So. 2d 977, 979 (Fla. 1987) (per curiam) ("[T]he recovery of attorney's fees is ancillary to the claim for damages. A contractual provision authorizing the payment of attorney's fees is not part of the substantive claim because it is only intended to make the successful party whole by reimbursing him for the expense of litigation. In fact, an attorney's fee can only be recovered after the determination of the prevailing party has been made."); *see also First Specialty Ins. Co. v. Caliber One Indem. Co.*, 988 So. 2d 708, 714 (Fla. Dist. Ct. App. 2008).

TRADS argues that *Assurance Co. of America v. Lucas Waterproofing Co., Inc.*, 581 F.

Supp. 2d 1201 (S.D. Fla. 2008), compels a different result. In *Lucas Waterproofing*, the court held that "attorneys' fees and costs that an insured becomes obligated to pay because of a contractual or statutory provision, which are attributable to an insurer's duty to defend the insured against claims that would be covered by the policy if the claimant prevails, constitute damages because of 'property damage'" within the meaning of a liability insurance policy. *Id.* at 1215. The court noted, "The thrust of the reasoning in *Cheek* is that a contractual provision entitling a prevailing party to attorneys' fees is not integral to the core purpose of the bargain." *Id.* at 1213. *Cheek* did not apply to attorney's fees awards against an insured sought as damages under its liability policy, the court explained, due to the substantive nature of a liability insurer's right and duty to defend under the policy, the externality that would arise by permitting an insurer to defend against a claim covered by the policy without accounting for the attorneys' fees imposed on the insured if the claimant prevails, and the need to align the of interests of the insurer and insured. *Id.* at 1214.

Unlike in *Lucas Waterproofing*, the attorneys' fees at issue here are sought under a contractual provision for attorney's fees that is not "integral to the core purpose of the bargain" and instead "is merely remedial in the sense that its only purpose is to make the prevailing party whole once the breach of a substantive provision occurs." *Id.* at 1213. Therefore, there is no basis for extending *Lucas Waterproofing* to this context. Because TRADS fails to conclusively establish that it suffered any substantive damages as a result of MacLachlan's alleged breach, its motion for partial summary judgment as to liability on its claim for breach of contract must be denied, and the Court need not consider the parties' arguments as to other elements of this claim.[6]

---

[6] TRADS makes an additional argument as to the damages element based on statements in a nonparty's proxy statement filed with the SEC, but MacLachlan correctly notes that the proxy statement is hearsay and TRADS fails to cite any hearsay exception rendering it admissible.

### B. Injunctive Relief Claim

Summary judgment is also inappropriate as to TRADS's claim for injunctive relief. TRADS concedes that any injunction should only last until February 10, 2016. (DE 49 at 18–19.) The Court imposed a preliminary injunction to enforce the Noncompetition Agreement that expired on February 10, 2016. As February 10, 2016 has passed, TRADS has received the benefit of its bargain and it appears any additional claim for injunctive relief is moot. If the claim is moot, the Court must dismiss it for lack of subject-matter jurisdiction. *See Sheely v. MRI Radiology Network, P.A.*, 505 F.3d 1173, 1182 (11th Cir. 2007). Because the parties have not briefed the issue, however, in an abundance of caution the Court will allow the parties to submit supplemental briefs before determining whether TRADS's claim for injunctive relief should be dismissed as moot.

## IV.  Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED** that Plaintiff's Motion for Partial Summary Judgment (DE 49) is **DENIED**. Furthermore, **within 14 days of this order**, the parties shall submit supplemental briefs on whether TRADS's claim for injunctive relief is moot. Alternatively, the parties may file a joint stipulation that the injunctive relief claim is moot.

**DONE AND ORDERED** in chambers at West Palm Beach, Palm Beach County, Florida, this 29th day of February, 2016.

_____
KENNETH A. MARRA
United States District Judge